## McKay, Trustee, etc., v. Dibert.*

*(Circuit Court, D. New Jersey.  January 11, 1881.)*

1. PATENTS—INFRINGEMENT—PROVISIONAL INJUNCTION.

Where complainant has for a number of years been in the extensive and undisputed use of patents, and during all that period there has been a public acquiescence in the monopoly, a provisional injunction to restrain infringement will be granted, unless some special facts appear to take it out of the general rule.

2. SAME—SEPARATE PATENTS FOR MACHINE, PROCESS AND PRODUCT—EXPIRATION OF ONE, OTHERS STILL EXISTING.

Where, under the acts of July 4, 1836, and March 3, 1839, a patent was taken out for a machine for the manufacture of a specific article, and subsequently, and within two years, patents were applied for and granted for the process of manufacturing such article, and also for the product of such process as a new article of manufacture, *held*, that the patents for the process and product did not terminate with the

*Reported by Homer C. Eller, Esq., of the St. Paul bar.

expiration of the patent for the mechanism by which such process was carried on and such products produced, although such mechanism might be of no value except to carry on such patent process and manufacture such patent product.

3. SAME—PATENTS FOR MACHINE AND PRODUCT—PATENTS NOS. 20,775, 29,561, 29,562, AND RE-ISSUE 9,043.

July 6, 1858, patent No. 20,775 was granted for "improvement in sewing machines" for sewing boot and shoe soles. August 14, 1860, two separate patents were granted to the same patentee,—No. 29,561 for improvement in the construction of boots and shoes, and No. 29,562 for improvement in boots and shoes; the first of the two last named being for the process by which the machine covered by patent No. 20,775 manufactured the shoes, and the second for the result or product of such process. Before their expiration they were all extended,—the machine patent for seven years from July 6, 1872, and the process and product patents for seven years from August 14, 1874. The process patent extended (No. 29,561) was afterwards surrendered, and re-issue No. 9,043 issued for the unexpired term. *Held*, that the right of the public to use the machine patent upon the expiration of the extended letters thereon did not carry with it a right to use it for the manufacture of shoes covered by the process or product patents during their unexpired term, though nothing could be manufactured with such machine except the patented product.

4. SAME—EMBRACING IMPROVEMENTS IN ONE OR MORE PATENTS—DISCRETION OF COMMISSIONER.

Whether a given invention or improvement shall be embraced in one, two, or more separate letters patent is in the discretion of the commissioner of patents, and courts have no absolute control over such discretion.

*Bennett* v. *Fowler,* 8 Wall. 445.

*James J. Storrow, Elias Merwin, James J. Meyers,* and *Wm. L. Dayton,* for complainant.

*George Harding* and *James Buchanan,* for defendant.

NIXON, D. J. This is a motion for a preliminary injunction. It seems that the complainant, as trustee of the McKay Sewing Machine Company, has been in the extensive and undisputed use of three several patents for many years past, and that, during all this time, there has been a public acquiescence in the monopoly. Under these circumstances a provisional injunction should be granted, unless some facts appear which take the case out of the ordinary rule. The defendant claims that such facts exist.

The first of complainant's patents, numbered 20,775, was issued to Lyman R. Blake, his assignor, on the sixth of July,

1858, for "improvement in sewing machines." This was a machine patent, and it claimed the invention of an improved machine for sewing the sole on a boot or shoe. After it was issued, to-wit, on the twenty-eighth of June, 1859, the same inventor applied for another letters patent, claiming (1) the process of uniting the soles and vamps of boots or shoes by the use of the said machine, and (2) the boot or shoe as a new article of manufacture made under the said process. Being advised by the commissioner of patents that he must erase or withdraw one of these claims, as he could not combine in the same application claims both for the process and the product, he withdrew the specifications and claim for a new article of manufacture, and afterwards put in a separate application for the same.

On the fourteenth of August, 1860, two separate patents were granted to him — one, numbered 29,561, for a new and useful improvement in the construction of boots and shoes; and the other, numbered 29,562, for a new and useful improvement in boots and shoes,—the first being for the process by which the machine constructed the shoes, and the second for the product or result of the process. Before the expiration of the first grants these patents were severally extended by the commissioner, according to the provisions of the act of July 8, 1870, (Rev. St. §§ 4924–7,)—the machine patent being extended June 22, 1872, for seven years from July 6, 1872; and the process and product patents, on the thirteenth of August, 1874, for seven years from the fourteenth day of the same month and year. The original extended letters patent, No. 29,561, having been surrendered to the commissioner, the same were re-issued to the complainant on amended specification and claims, on the thirteenth of January, 1880, and were numbered re-issue 9,043 for the residue of the extended term.

The bill of complaint charges that the defendant, on or about the fifteenth of March, 1880, procured two machines for sewing the soles of boots and shoes to their vamps or uppers, according to the process patented to said Blake by the patent of August 14, 1860, re-issued as No. 9,043, which

machines were constructed according to and embodied all the inventions described in the letters patent aforesaid, and were designed and adapted in their ordinary and natural operation, when used in the manufacture of shoes, to produce the shoes patented to Blake by the patent No. 29,562, and for some time past has, without the license and against the consent of the complainant, used the said machine, and manufactured and sold large quantities of the improved shoes made according to the process patented to Blake as aforesaid.

The defendant seeks to justify such manufacture and sale upon the ground that, the extended term of the machine patent having expired, he, in common with all the world, has the right to use machines embodying the said mechanism; and, if by such lawful use of common property he infringes the process and product patents of the complainant, these patents are necessarily void.

We have thus presented for consideration an interesting and novel question. All embarassment would have been avoided if the officers of the patent-office had required the inventor, when he applied for the process and product patent, to surrender his original patent for the mechanism, and had then made three several re-issues—for the machine, the process, and the product—all bearing the same date and expiring at the same time. Such course was pursued in the case of *The Rubber Co.* v. *Goodyear,* 9 Wall. 788, where the inventor first patented the process, and afterwards surrendered the letters patent and took his re-issue in two several patents, one for the product and the other for the process of the product. But such a step was not required in the present case, and it is a fair inference, from what was decided in *Bennett* v. *Fowler,* 8 Wall. 445, that the courts have no absolute control over the head of the patent-office in the exercise of his discretion whether a given invention or improvement shall be embraced in one, two, or more letters patent.

Taking the case, then, as we find it, the naked question presented is : If an inventor embody in a machine a new mechanism to accomplish a desired and express purpose, does the patent law authorize him to procure (1) a patent for the machine,

(2) a patent for the process by which the result was achieved, and (3) a patent for the product of the process as a new article of manufacture; and if such patents expire at different times has the court the power to decree that the younger patents in the series shall die when the older one runs out? Or, to state the proposition more succinctly, is there authority in the law to continue to an inventor the monopoly in the product of a machine after the machine itself has become public property by falling into the domain of public use? In determining such a question reference must be had, of course, to the law as it stood when the several patents were issued. These were the acts of July 4, 1836, and March 3, 1839, which were substantially the same as the present statute in regard to patentable subjects.

By the sixth section of the first-recited act the commissioner of patents was authorized to grant letters patent to any person who had discovered or invented "any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvement in any art, machine, manufacture, or composition of matter, not known or used by others before his or their discovery or invention thereof, and not, at the time of his application for a patent, in public use or on sale with his consent or allowance as the inventor or discoverer." By the seventh section of the later act such public use or sale shall not avoid the patent, unless the same has continued for two years prior to the application for the patent. It is here we find the scope and extent, as well as the limitation, of the power of the commissioner of patents in regard to granting or withholding letters patent. If the inventor, after obtaining his first patent for the machine, had waited for more than two years before applying for the process and product patents, there may have been such disclosure and public use of the invention that the limitation would have applied, and the patent-office been compelled, under the provisions of the supplement of 1839, to have rejected the subsequent application. But no such time elapsed, and I am of the opinion that it was competent for the patentee, within the two years, to take out his process and

product patents, and thus to guard himself against the danger and loss that might arise from others using the process to accomplish other results, or securing the product by the agency of other means and instrumentalities.

Two reasons were forcibly presented by the learned counsel for the defendant why the act should not have the above interpretation: (1) Because it was asking the court, by judicial construction, to extend the monopoly and life of a patent for two years beyond the time prescribed by the law; (2) because the machine patent having expired, and belonging to the public, it was a contradiction in terms to hold that its use could be restrained on the ground that by its use other patents were infringed. These reasons need not be considered separately, and I think the difficulties which they suggest grow out of a misapprehension of what the court is supposed, in fact, to do in the case. The argument was that if an inventor procures a patent for a machine, and, after holding it for any length of time less than two years, is permitted, without the surrender of the original and a re-issue, to apply for a patent for the process employed, and the product obtained from the use of the machine, and then, after the expiration of the machine patent, may restrain its use by the public until the process and product patents run out, it is practically extending the life of the first patent, and giving the owner a monopoly beyond the period of time to which the law in express terms limited it.

But the court does not propose to restrain generally the use of the machine but only such unlawful use of it as infringes the vested rights of others. As long as separate patents for a machine, and the process and the product, are allowable, they represent *distinct* inventions, (*Kelleher* v. *Darling*, 14 O. G. 673,) and each one may live, without interference or molestation, its whole life without regard to the death of the others. While the product patent continues in existence, the manufacture of the product by any instrumentality is prohibited, and it is no answer to the charge of infringement to say: "I had the right to use the particular mechanism by which I obtained the product."

But the defendant insists that the machine belongs to the public to use, and that nothing can be manufactured from it except the product, of which the complainant has yet the monopoly. If this be true, then the public must find out some other use to put it to, or abstain from its use until the time comes in which it may be used without infringing the right of others.

A provisional injunction must issue according to the prayer of the bill.