BETTIS et al. v. CALIFORNIA MFG. & ENGINEERING CO. et al.

No. 6035.

Circuit Court of Appeals, Ninth Circuit.

June 9, 1930.

Raymond Ives Blakeslee, of Los Angeles, Cal. (Leonard S. Lyon, of Los Angeles, Cal., of counsel), for appellants.

Ford W. Harris, of Los Angeles, Cal., and Herbert A. Huebner, of New York City, for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge.

Appellant brought this action alleging an infringement of patent No. 1,573,031 for a "well casing protector." The patented device is for use in connection with a rotary drill for oil wells, and is designed to protect the metal well casing from contact with the metal drill pipe and couplings by the interposition of a rubber buffer. The vibration of the drill pipe during drilling causes such contacts and the consequent injury to the casing and the drill pipe. Such contacts also result from the crookedness of the well and the fact that the drill pipe and the well casing are not concentric, at some points resulting in friction at the points of contact between the drill pipe with its projecting couplings and the inner surface of the well casing, the grit in the drilling mud tending to wear out the contacting metal surfaces. The patented device consists simply of a band of rubber, or other resilient material, with an interior diameter smaller than the exterior diameter of the drill pipe for gripping the drill pipe tenaciously by reason of its elasticity with an exterior diameter greater than that of the pipe couplings, although more elaborately described in the patent. As the pipe vibrates in the well, the rubber protector strikes the well casing, and protects both the casing and the drill pipe. The band is to be sufficiently elastic so it can be slipped over the coupling joints in the drill pipe and yet be held in place on the drill pipe by its elasticity. The rubber immersed in the drilling fluid, consisting of thin mud, has little frictional resistance on contact with the casing, and does not quickly wear out. There is, of course, nothing new in the use of rubber as a buffer to prevent

damage due to vibration or shock, and certainly nothing new in the use of a rubber band held in place by the elasticity of rubber. As said by the Supreme Court in 1874 in Rubber-Tip Pencil Co. v. Howard, 20 Wall. 498, 506, 22 L. Ed. 410, speaking of the patentability of a rubber eraser head to be secured to the lead pencil by its own elasticity:

"Again, the head is to have in it longitudinally, a socket to receive one end of a lead-pencil or a tenon extending from it. This socket is to be cylindrical or of any other proper shape. Usually, the inventor says, he made it so as to extend part way through the head, but if desirable, it might be extended entirely through. It must be within one end, but any particular location at the end is not made essential. This clearly is no more than providing that the piece of rubber to be used must have an opening leading from one end into or through it. This opening may be of any form and of any extent longitudinally. * * * Any piece of rubber with a hole in it is all that is required thus far to meet the calls of the specifications, and thus far there is nothing new, therefore, in the invention. * * *

"But the cavity must be made smaller than the pencil and so constructed as to encompass its sides and be held thereon by the inherent elasticity of the rubber. This adds nothing to the patentable character of the invention. Everybody knew, when the patent was applied for, that if a solid substance was inserted into a cavity in a piece of rubber smaller than itself, the rubber would cling to it. The small opening in the piece of rubber not limited in form or shape, was not patentable, neither was the elasticity of the rubber. What, therefore, is left for this patentee but the idea that if a pencil is inserted into a cavity in a piece of rubber smaller than itself the rubber will attach itself to the pencil, and when so attached become convenient for use as an eraser?"

By substituting in the last question the word "drill pipe" for "pencil" and "buffer" for "eraser," we have a somewhat analogous question. In the appellants' patent the elastic strength of rubber is utilized as in the case of the pencil eraser. Its well-known elastic quality is utilized as a buffer to break the shock of collision. Its muddy surface is also used to reduce friction. In short, the well-known qualities of rubber are thus utilized by the appellants' device. Assuming, however, without deciding, that the patent is valid, the question of infringement remains.

The defendants' device consists of a collar or hollow right cylinder of brass, divided at the opposite extremities of the diameter of the cylinder hinged at the point of division on one side and secured by a removal pin on the opposite side. In order to secure the brass cylinder upon the pipe, the removal pin is withdrawn, permitting the collar to be opened on its hinge to admit the drill pipe. Then the cylinder is closed around the pipe and the pin replaced. The brass collar, or cylinder, then incloses the pipe, but so loosely that it is readily moved up and down on the pipe to any desired position. In order to make the collar secure, wedge-shaped metal shims are inserted in two slots prepared therefor in the metal collar, one near the upper and one near the lower edge. The contact surfaces are curved, and the inner surface of the shim which comes in contact with the steel drill pipe has teeth like a ratchet. These wedges are then driven in solidly, and thus effectively secure the metal collar upon the drill pipe. The metal collar or hollow cylinder of the defendants' device is so constructed that the solid metal of the upper part of the collar and the solid metal of the lower part of the collar, instead of being connected by solid brass, are connected by six or eight parallel brass rods which are in turn connected by horizontal rings, so that the metal part of the device constitutes a hollow cylinder, the upper and lower portions of the cylinder being of solid brass and the intermediate surfaces of the cylinder being so cut away that the only metal connection between the upper and lower portion is the brass rods. The open portion of the brass collar so used by the defendants' device is filled with rubber, which completely envelopes the vertical rods and horizontal rings, leaving exposed the metal collar at the upper and lower end of the cylinder, thus giving the appearance of a rubber cylinder with a brass collar above and below.

The rubber is cut through along the line of the pin and opposite the hinges so that the device can be opened on its hinges, and, while open, placed around the pipe and then closed and secured by the pin and wedges as above mentioned. There is no gripping effect of the rubber on the pipe to hold the defendants' device in place. The complete separation of the rubber ring prevents the utilization of the tensil strength of the rubber cylinder or band as an element in holding the defendants' device in position. In the defendants' device reliance is placed wholly upon the gripping effect due to the use of the shim, or wedge, driven in between the surface of the drill pipe and the inner surface of the brass collar to hold it in position. The effect of this

460

shim, or wedge, is to bring into play the tensil strength, and thus the gripping effect of the brass ring, and in a measure the elasticity of the steel of the pipe which tends to resist the compression due to the wedge. Thus the elastic strength of the steel pressing outward to prevent the deformation of the pipe and the elastic strength of the brass squeezing inward to resist reformation by the wedge holds the collar, or protector, in place. This is important, because the main contention of the appellant is that the following portion of his patent is infringed: " * * *, and fourth, to supply a method for retaining the protector in proper position on the drill pipe without mechanical fastening means other than its own inherent characteristics."

And claim No. 5 of the invention: "5. In combination with a coupled drill pipe, rings of resilient material gripping the pipe intermediate the couplings; the diameter of said rings when thus positioned being greater than that of said couplings; and said material being adapted for water lubrication and for resisting by its resiliency the embedding of extraneous material therein."

█ The only material specified in the patent is rubber. The qualities of rubber are well known. There can be no infringement of a valid patent because of the use of rubber as a buffer to prevent injury due to vibration and friction. It is obvious from the foregoing statement that the defendant does not rely upon the use of resilient material gripping the pipe, for in his device the rubber does not grip the pipe, and neither the steel nor the brass are resilient material within the meaning of the patent. There could be no patent upon the use of buffers of greater diameter than the couplings because it is a matter of common knowledge that, in order to prevent the couplings hitting the well casing, the buffer would have to be of larger diameter than the couplings. The fact that rubber is slippery when wet, and would tend to reduce friction between the drill stem or pipe and the well casing, is well known; moreover, rubber has been used for exactly this purpose in an earlier patent by Wellington and Ryan, No. 1,424,964, where a vertical rod for operating a centrifugal pump in a well casing by metal casing was inclosed by rubber buffers at intervals to prevent injurious results of vibration. These rubber cylinders surrounding the rod in the Wellington and Ryan patent were held in position by brass plates above and below the rubber secured to the pump rod by pins. It thus is similar to the device of the appellants in the use of the rubber cylinder to prevent friction and reduce the effects of vibration. However, the Wellington and Ryan device does not rely upon the elasticity of the rubber to hold it in place on the pump rod.

█ The claims of the patent must be narrowly construed to be held valid. It could hardly be contended that the patent could prevent tying a rope around the drill pipe to prevent the wear and tear due to friction or vibration, or the use of a spliced rope for a similar purpose, or the use of a rope grammet small enough to require pressure to force the same over the pipe coupling, and small enough to grip the pipe when in place, or to prevent the wrapping of the pipe at intervals with rope of sufficient diameter to prevent the contact of the drill stem or pipe with the casing because the use of rope as a buffer was well known at the time the patent was issued, and yet such a rope would come within the claims of the patent broadly construed. In our opinion, for the reasons stated, the device of the appellee does not infringe the appellants' patent.

Decree affirmed.