SHIPP v. SCOTT SCHOOL TP., MONTGOM-
ERY COUNTY, IND., et al.

No. 4597.

Circuit Court of Appeals, Seventh Circuit.
Dec. 30, 1931.

Rehearing Denied Feb. 18, 1932.

Herbert A. Minturn and Joseph A. Minturn, both of Indianapolis, Ind., for appellant.

Ernest W. Bradford, of Washington, D. C., and James E. Rocap, of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Six claims of patent No. 1,711,814 to appellant, covering a radiator box base, were involved in the suit, which resulted in a decree for appellees. The district court found claim 9 noninfringed and the other claims invalid.

In disposing of the case, the court filed "specific findings of fact and conclusions of

law." They well state the facts, and we quote therefrom: [1]

Infringement turns upon the presence and effect of the words "channel bar of corrugated metal for each edge having a turned edge hooked to a respective one of said base edges." The specifications and the drawings both point to this separate element. The following is taken from the specifications: "The top longitudinal edge 22 of the base in front is set in or indented by an ogee curve 23, to form a recess for a channel bar 24, here shown as formed out of a strip of corrugated sheet metal having one edge bent and hooked over edge 22, and the opposite portion bent to form a channel 25."

Appellant's position is that a full range of equivalents includes a channel bar integral with the bottom wall of the box-base.

---

[1] "The invention of the patent relates to heating apparatus for buildings and particularly to the bases for the boxes or housings which surround the radiators to provide for the conduct of air from the outside through the space enclosed by the box or housing surrounding the radiator. The box-base is hung to the radiator above the floor by hook supports which hook over the end bosses of the radiator and are attached to the base. The box base is connected with a flue leading through the building wall through which outside air may be admitted. It also has a door in its bottom which may be opened for the admission and circulation of air from the room and also for clean-out purposes. The box-base is formed in two parts connected by cleats or bars extending across the joint between them and attached by rivets to one part and by screws to the other part. The joint between the two parts extends diagonally from the half-round opening, which fits against the under side of the radiator bosses, to the front line of the door opening in the bottom. The base is also provided with separate channel bars on its upper edges having double channels, one of which fits over the edge of the base and the other channel of which receives the lower edges of the plates composing the box housing.

"Defendants through a contractor had installed in a high school building at New Market, * * * Indiana, a heating plant having radiators which were enclosed in boxes or housings mounted upon box-bases of substantially the structure of the patent in suit except the channel bars for forming the joint between the lower edges of the plates composing the box and the base, were not employed. * * *

"The prior art as illustrated by these patents shows that at the time of the filing of the application on which the patent in suit was granted (August 28, 1926) many devices were well known for accomplishing the same purpose in substantially the same way as the device of the patent in suit. * * *"

After discussing the prior art, the court concluded:

"I. Claim 9 of the patent in suit, if valid, is limited to Plaintiff's particular form of channel bar, and when so limited, there is no infringement of said Claim by Defendants' structure.

"II. Claims 1, 2, 3, 8 and 13 are invalid as defining no patentable invention over the prior art."

Claim 9 reads as follows:

"9. The combination, with a radiator box-base having front and rear longitudinal edges, *of a channel bar of corrugated metal for each edge having a turned edge hooked to a respective one of said base edges,* and a radiator box of corrugated metal seated in the channel bars."

---

Generally speaking, the combination which appellant sought to cover by this patent was a box-base composed of two parts, the front and the back. Each part was in turn composed of two other parts, the upper and the lower parts, the lower part being referred to as the box-base and the upper, as the box. Connection of the two parts is by means of a slip joint. The slip joint was described in this claim as a separate element in this language: *"a channel bar of corrugated metal for each edge having a turned edge hooked to a respective one of said edges."* This use of the separate channel bar and its construction were stressed as the novel feature in the combination before the Patent Office. There, the applicant sought to distinguish his combination from the prior Bolinger patent and said: "The Bolinger patent shows slip-joints * * * as formed on the lower edges of the diffuser out of the material of the diffuser itself, whereas applicant's corresponding member * * * *is formed out of a separate strip of metal* and is attached to the base, the other edge up, in a permanent manner by spot welding. * * * This difference in construction secures several substantial advantages: First, it so stiffens and reenforces the edges of the base that they will stand shipment and handling without buckling * * *. This is important in the box base to maintain its shape so the flange * * * will always fit and also to hold the correct shape so the sheet metal of the diffuser can be bent true against it for assembly. Second, it reverses the channel so a cement with which the joints between the diffuser and box are sealed after assembly will not fall out; and, third, applicant's construction cheapens the cost of manufacture because his channel bars are made out of scrap metal that would otherwise be wasted."

The Examiner in the Patent Office concluded that notwithstanding these asserted differences the Bolinger patent prevented the allowance of the claim as originally presented. Applicant thereupon changed the claim so as to make the channel bar "of corrugated metal," and the claim as thus amended was then allowed. Whether the Patent Office was correct in its construction of the Bolinger patent is not of any significance so far as the question now before us is concerned. The Bolinger patent may, or may not, have anticipated the claim as originally presented. On the question of infringement, however, patentee must be held to the plain language of his claim, the construction of which is made clear by his contemporaneous explanation of its novel feature.

■ We agree with the district court in its conclusion that appellees' structure did not infringe claim 9.

The other five claims cover combinations with entirely different elements. Claim 1 is somewhat typical, and reads as follows: "A radiator box base having end members with half-round openings at their bottoms and having a bottom door opening in the rear half of the base, said base being in two parts divided longitudinally of the bottom at the front line of the door opening and obliquely from the door opening toward the middle of the half round openings and means for removably securing the parts in assembled position."

Appellees contend, and the court found, that these claims were invalid as not exhibiting invention in view of the prior art. Appellant argues that the court erroneously included in the prior art two patents issued to him. But we are not satisfied that the district judge reached his decision because of these two patents being considered as a part of said prior art. In fact, in his special findings he discussed numerous patents issued long prior to the patent in suit. We shall, however, first consider whether the two patents to appellant should be excluded in reaching our conclusion respecting the validity of these five claims.

The patent in suit was issued May 7, 1929, upon an application filed August 28, 1926. The two previous patents to Shipp, Nos. 1,565,294 and 1,575,651, were issued December 15, 1925, and March 9, 1926, respectively, upon applications filed September 15, 1924. They both cover housing construction for steam radiators, though one is called a reheating radiator housing. Neither patent included the claims covered by the patent in suit. However, both patents showed by drawings and specifications the novel elements which form the basis of the claims now under consideration.

It is not necessary to refer more particularly to the disclosures of these two patents because of our conclusion that they were not a part of the prior art. The question involving their consideration may be stated thus: May A, who seeks a patent upon a certain structure and discloses, but does not cover by claim, certain novel features therein, apply, within two years from the reduction of his invention to practice, for a new patent covering the disclosed but unclaimed novel features in the earlier application, when it appears that the second application was made after the patent on the first application had issued? In the instant suit, Shipp testified without contradiction that the actual reduction of his invention to practice occurred September 1, 1924. His application for the patent in suit was filed August 26, 1926.

■ The answer to the question propounded involves a consideration of possible waiver on the inventor's part. When does an inventor waive his right to a patent? Stated differently, when and how does he dedicate his invention to the public? These questions, we think, are ordinarily questions of fact. Generally speaking, the filing of an application for a patent, which application discloses novel features without making accompanying claims to all of the novel features disclosed, and the acceptance of a patent thereon, give rise to the legitimate inference that the applicant intended to dedicate to the public the unclaimed novel features of his invention. In other words, it is fairly inferable from such action that the inventor intended to waive his right to a patent monopoly upon the unclaimed novel features of his invention. But does such action on his part *conclusively* establish dedication? We think not.

■ If the inventor does not make application within the time prescribed by statute, he is barred from ever obtaining a patent. In a sense, it might be said that his failure to timely present his application for a patent is conclusive evidence of an intended waiver of his right to a patent and of his intended dedication to the public, though it is the statute alone which thus denies him the right to the patent. But we are here dealing with a closer question. We are to construe the inventor's act in applying for a patent but not claiming each of the novel features disclosed in the application. Did he, by failing to insert claims for such novel features, waive his right to later (but within two years of his reduction to practice) apply for a patent on the previously disclosed but unclaimed novel elements? And did the fact that his previous action has resulted in the issuance of a patent in any way affect the question of waiver or dedication?

■ There is, we think, a limitation to the inference of dedication which arises when the inventor within the time fixed by statute files another application for the unclaimed novel features referred to. In reaching this conclusion, we are not unmindful of the fact that the public is interested in every patent and in the period of its duration. Nor have we overlooked the possible effect of the Reissue Statutes. However, the statute fixes the time within which an applicant may make application for a patent on his inventions, and, so

long as he acts within the time fixed, he is strictly within his legal rights.

Getting back to the original proposition that waiver and dedication are both ordinarily questions of fact, it becomes necessary for the court to place applicant's act in failing to claim all of his discovery against his other act of filing another application, within the time permitted by statute, wherein he made claim to the disclosed but uncovered features of his first application. If no other fact appears bearing upon the issue of waiver, it would seem, upon this showing, that a finding in the inventor's favor would be unavoidable. It follows, therefore, that Shipp was not prevented from prosecuting his application for the patent in suit because of the issuance to him of the other two patents, and, as a corollary, that the said two patents, under the facts here disclosed, did not constitute a part of the prior art as against him.

But, irrespective of this prior art, we are not favorably impressed by the asserted patentable novelty of Shipp's invention represented by the five claims now under consideration. Shipp was laboring in a well-crowded art. Moreover, his problem called for a mechanic's solution rather than for the genius of an inventor. In other words, he was making a box. Calling it by a more pretentious name did not add to the intricacy of the problem. The fact that the infringers in this case, before seeing appellant's structure, made a box similar to appellant's is at least some proof that the common solution of the mechanical problem did not constitute patentable invention. Walker Mfg. Co. v. Illinois Brass Mfg. Co. (C. C. A.) 265 F. 279.

There was, of course, something more involved than the making of a simple box. A box was required which encased a steam radiator. It should not permit of the escape of the unheated air, nor take in through cracks the foul air of the school room. Older by years in this art were boxes designed for use for the same purpose, which had connection with a pipe leading through the wall of the building to the fresh air outside; which boxes were composed of two sides, a back and a front, and each side was composed of two parts, an upper and a lower. These boxes were provided with a door at the bottom to permit of cleaning, and different kinds of material and construction were used to prevent buckling, to permit of easy assembling, and this structure and material bore on manufacturing cost. The means for attaching the front and back members of the box-base and the box and the means to prevent cracks appearing about the steam pipe, as well as the kinds of material used, were numerous. Each evidenced the preference of the mechanic who did the work of construction. We do not believe that the limitation upon the base of this box appearing in the claim was a novel feature that rose to the dignity of patentable invention.

The decree is affirmed.