## OLIVER–SHERWOOD CO. et al. v. PATTERSON–BALLAGH CORPORATION et al.*

### No. 8248.

Circuit Court of Appeals, Ninth Circuit.

Feb. 2, 1938.

*Writ of certiorari denied 58 S.Ct. 1042, 82 L.Ed. ——.

Miller & Boyken and A. W. Boyken, all of San Francisco, Cal. (Carroll A. Gordon, of San Francisco, Cal., of counsel), and Benjamin F. Bledsoe, of Los Angeles, Cal., for appellants Oliver Sherwood Co. et al.

Lyon & Lyon, Frederick S. Lyon, Leonard S. Lyon, and R. E. Caughey, all of Los Angeles, Cal., for appellee Patterson-Ballagh Corporation.

John J. Wilson, Charles C. Montgomery, and Harris, Kiech, Foster & Harris, all of Los Angeles, Cal., for appellee Bettis.

Before WILBUR, STEPHENS, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

Charles F. Sherwood is the patentee in three United States patents, Nos. 1,376,043, 1,416,988, and 1,510,804. All these patents involve the use of rubber on bearing or journal surfaces with water as a lubricant. Patents 1,376,043 and 1,416,988 were applied for February 24, 1920. Patent 1,376,043 was issued April 26, 1921, before patent 1,510,804 was applied for (June 23, 1921). Patent 1,416,988 was issued May 23, 1922, after patent 1,510,804 had been applied for; thus patents 1,376,043 and 1,416,988 were copending applications, and 1,416,988 and 1,510,804 were copending, but patent 1,376,043 is a prior patent with reference to patent 1,510,804, issued October 7, 1924.

The owners of patents 1,416,988 and 1,510,804, the Oliver Sherwood Company, and the licensee thereunder, B. F. Goodrich Company, brought this suit for infringement of these two patents against the Patterson-Ballagh Corporation which was manufacturing a rubber sleeve, or collar, to be placed upon the drill pipe line used in rotary drilling operations. These collars were manufactured under a license from William I. Bettis, who owned letters patent 1,573,031 applied for January 5, 1925, issued February 16, 1926, to Bettis and Perry.

Later, W. I. Bettis was joined as a defendant in pursuance of motion made and granted under equity rule 30. He filed an answer denying infringement, and a counterclaim setting up his ownership of the Bettis and Perry patent 1,573,031 and charging that this patent was infringed by the plaintiffs.

The defendants all denied infringement and attacked the validity of the two Sherwood patents sued upon.

The special master to whom the issues were referred found the three patents involved (Sherwood 1,416,988 and 1,510,804, and the Bettis and Perry patent 1,573,031)

to be invalid. He also found that if the plaintiffs' two patents were valid they were not infringed. The master's report was excepted to by all the parties. An application for rehearing was made by the plaintiffs, and also by Bettis. The application was granted and the court modified its order, holding that the two Sherwood patents 1,416,988 and 1,510,804 were valid and not infringed, and adhered to the special master's finding that the Bettis and Perry patent was invalid.

The plaintiffs were content with the finding that Sherwood patent 1,416,988 was valid and not infringed and do not attack that finding, but by appropriate assignments attack the finding of noninfringement as to Sherwood patent 1,510,804.

Bettis filed a cross-appeal in which he attacks the finding and judgment of the trial court holding the Bettis and Perry patent invalid and not infringed and the finding of validity of plaintiffs' patents. The Patterson-Ballagh Corporation, no longer interested in the Bettis patent, secured a severance and filed a separate cross-appeal in which it confines its attack upon the decree to that portion of the findings and decree which holds valid the Sherwood patents 1,416,988 and 1,510,804. This it could have done as appellee without a cross-appeal. Herman Body Co. v. St. Louis Body, etc., Co., 8 Cir., 46 F.2d 879; Cf. Morley Const. Co. v. Maryland Cas. Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593.

For convenience we will refer to the Oliver Sherwood Company and the B. F. Goodrich Company as plaintiffs, and to the Patterson-Ballagh Corporation and William I. Bettis as cross-appellants.

We will dispose of the only procedural question of any importance before taking up the questions of validity and infringement of patents.

The plaintiffs claim that Patterson-Ballagh Corporation cannot be heard upon its cross-appeal in its attack upon the validity of plaintiffs two patents, 1,416,988 and 1,510,804, for the reason that the trial court held that these patents were not infringed. Consequently, it is claimed that the decree of the court was in favor of Patterson-Ballagh Corporation and therefore no appeal lies by it from the decree. This position cannot be maintained, although in view of the fact that the plaintiffs by their appeal have presented an opportunity for the cross-appellants to attack the finding of validity in the plaintiffs' patents, the cross-appellants were not confined to that remedy which might have been destroyed by plaintiffs' dismissing their appeal. It is true that no accounting was ordered and no relief granted against the Patterson-Ballagh Corporation but, as a party to the action, it would be bound in any future litigation between the parties by the adjudication herein that these two patents were valid. The validity of these two patents was placed in issue by the Patterson-Ballagh Corporation, and was litigated and determined adversely to its contentions. So far as its present design of rubber collars is concerned it might well rest upon the finding of noninfringement, but is not compelled to do so. We therefore hold that the Patterson-Ballagh Corporation on its cross-appeal is entitled to attack the validity of these patents. Bettis, on his cross-appeal, also attacks the validity of these patents, as well as the finding that his own patent is invalid.

Before making any more elaborate statement with reference to the three patents involved in this litigation, it will assist to an understanding of the questions involved if we make a preliminary statement with reference to the prior art:

As early as December 6, 1859, a patent, No. 26,352, was issued to A. Hay for a car axle box for locomotive. He declared his invention to be "a new and improved mode of constructing and securing the bearings of axles within the journal-boxes of locomotive engines and railroad cars which is also applicable to all axles and all other shaftings * * *. My invention consists in surrounding the bearings of railroad journal boxes with vulcanized india rubber or other suitable elastic material is applicable to any or all journal boxes." The patentee then discloses the difficulty of keeping a bearing in alignment with a shaft (the axle) owing to the inequality of the track, etc., and states:

"To remedy these defects I embed or surround the bearing with vulcanized india rubber, or other suitable elastic material within the journal box, by interposing it between the bearing and sides, and top, and ends of the journal box, * * *. If the bearings are oiled from the top of the box a metal tube should pass through the rubber to conduct the oil to the bearing. * * *

"My invention consists in providing a yielding motion for the bearing in every direction, in order to make it wear equally. It is applicable to all shafting * * *."

This patent, it will be observed, does not propose to bring the rubber in contact with the revolving axle or shaft, but provides for the interposition between the rubber and the axle of the ordinary metal bearing which is embedded in the rubber for the purpose of securing the desired alignment. This patent bears upon two phases of the two patents of plaintiffs in suit, that is, the use of flexible rubber in a bearing to secure alignment and to reduce wear.

On July 1, 1884, patent No. 301,412 was issued to F. W. Ulffers. This patent provided for supporting the shaft by bearings of parchment paper compressed in a number of half rings, or discs, each composed of a large number of layers of parchment paper. These half discs joined together to form a single disc were alternated in the construction of the bearing by discs of iron or steel having a larger inner circumference than the parchment discs, thus keeping the metal discs from contacting the shaft, the drawing for instance, showing 18 half rings (9 rings) of parchment and 16 half rings (8 rings) of iron. The whole was so arranged that the parchment paper rings were held in place and compressed by the iron rings so that in operation the journal rides upon the edges of the parchment paper discs, that is, upon the inner surface of the parchment rings. It is significant also that this patent proposes a lubrication of the journal by water flowing into the bearing between the parchment paper rings from the reservoir immediately over the bearing. The first claim of the Ulffers patent will sufficiently indicate the nature of the invention. It is as follows:

"A bearing or stuffing box having a bearing-surface consisting of compressed parchment-paper, with the edge-surface of the leaves against the shaft, substantially as set forth."

With reference to this patent it should be observed in passing that it discloses a method of supporting a shaft by a nonmetallic bearing of relatively soft material and that some of the claims of the plaintiffs' patents include any "elastic material" as well as rubber with water lubrication.

As early as August 28, 1888, hard or flint vulcanized rubber used in a step for spinning spindles was covered by patent 388,392 issued to J. Booth. The rubber support shown in this patent was cylindrical in form, the end of the spinning spindle being inclosed within the rubber cylinder with its end resting upon the rubber end of the cylinder enclosed in the spinning spindle. Nothing is said in this patent concerning the character of the lubricant to be used. In that regard it is said: "The step being made of hard or vulcanized rubber and so arranged as to be continually supplied with or surrounded by a lubricant, a construction is provided which is made more durable than any now known to me."

On June 11, 1907, patent 856,245 was issued to E. E. Gammon for a bearing for water meters; the patent shows a bearing very similar to that in the Larrabee patent (post). It shows the vertical shaft of the turbine of the meter enclosed at its lower end in a sleeve of hard rubber. Its end containing an insert of hard rubber which rests upon an agate ball is enclosed in hard rubber. The patent teaches that with hard rubber bearings revolving on agate, glass, quartz, or hard metal silicate with water lubrication "the parts are practically indestructible and last for years without attention or repair," whereas with metal bearings "the friction between the parts is ordinarily so great that such parts rapidly wear, and thus the accuracy of the meter is considerably impaired." The patent teaches: "The bearings as shown being always immersed in water and the water having access thereto through the apperture $s$ in the sleeve $h$, it is found that no lubrication is necessary; in fact the water itself forms a perfect lubricant for the hard rubber $l$ upon the agate ball $r$."

On August 17, 1909, a patent was granted to W. H. Larrabee, No. 931,069, for a "step bearing for upright shafts" designed particularly for a revolving propeller or meter wheels in water meters and for submerged positions in like apparatus. The patent shows a vertical shaft revolving in a hard rubber sleeve and supported at the lower end of the shaft by a metal ball which contacts the piece of hard rubber inserted in the end of the shaft. The patent refers to the bearing as practically frictionless and shows water lubrication only and points out the relatively slight wear involved in such contact.

A patent which was issued October 17, 1911, to Walter Fritz, No. 1,005,954, for a stuffing box, is cited as part of the prior art. This patent provides for a stuffing box wherein the packing "which may be made of any appropriate material" is secured either to the journal of the shaft or to the bearing. In this regard the patent states:

"My invention may be applied either with the packing stationary or connected with the rotary member so as to share its rotation." But the purpose of this patent is to secure a tight fit without undue friction in a stuffing box, and does not relate to a bearing and journal of a shaft. It is not a weight supporting device and has little relevance to the problems dealt with in the patents in suit.

In connection with the teaching of the prior art it should be remembered that size is not a criterion of invention, hence, the fact that the water meter patents show comparatively small bearings and journals and deal with relatively light weights does not narrow the invention involved in these patents to the use of rubber in the journal or bearings to small journals or light weights. Smith v. Nichols, 21 Wall. 112, 88 U.S. 112, 22 L.Ed. 566; A. O. Smith Corp. v. Petroleum Iron Works Co. of Ohio, 6 Cir., 73 F.2d 531; Id., 6 Cir., 74 F.2d 934; Newton Steel Co. v. Surface Combustion Co., 6 Cir., 75 F.2d 305; Maulsby v. Minneapolis Casket Co., 8 Cir., 84 F. 2d 107; Dailey v. Lipman, Wolfe & Co., 9 Cir., 88 F.2d 362, 364.

With this preliminary statement of the prior art we approach the Sherwood patents with the knowledge that Sherwood was not the first to use rubber in a bearing to support the weight of the shaft and to secure alignment of the bearings (Hay patent, No. 26,352, supra) and that he was not the first to use relatively soft frictional surfaces in the bearing as a support for the shaft (Ulffers patent, No. 301,412, supra), nor was he the first to discover that rubber in frictional contact with metal could be lubricated by water with little friction or wear.

The first Sherwood patent, No. 1,376,043, is only involved in this action in so far as it affects the validity of the subsequent patents to Sherwood 1,416,988 and 1,510,804 herein sued upon. In this connection it should be stated that the Patterson-Ballagh Corporation, cross-appellant, claims that the Sherwood patent 1,376,043 discloses all that is shown in the two later patents, and that we thus have double or treble patenting and anticipation. Therefore, it will be necessary to examine these claims with some detail, and we begin our study of the patents by a consideration of Sherwood patent 1,376,043. Herein we find a journal of a shaft to which rubber is attached in spiral form. The pitch of the spiral or screw as shown in the drawings is such that the distance between the turns of the rubber spiral is about four times the width of the bearing surface of the spiral, a pitch of five times the bearing surface. The surface of the bearing is hard rubber. The lubrication is provided by a continuous stream of water flowing around the journal of the shaft in the spaces between the spiral. It will be observed by this construction that the water has a comparatively clear passage from its inlet around the journal to the outlet and that the bearing surface where the spiral contacts the hard rubber sleeve is constantly changing so that, using the figures we have adopted in our description, the water is in contact with the hard rubber surface four-fifths of the time as against one-fifth in contact with the rubber. This form of bearing is particularly alluded to in the claims and specifications, the screw action of the rubber spiral being referred to as forcing the water through the bearing and permitting the change of surface we have indicated.

In addition to this matter of lubrication we are taught in this patent the feasibility of supporting the weight of the shaft by a rubber surface. Although the construction shown in the patent drawing involves the frictional contact between the resilient rubber of the spiral attached to the hard rubber sleeve with the steel of the journal, the patent claims are not confined to the use of a hard rubber sleeve, but expressly claims the invention to be applicable to a spiral of rubber attached to a sleeve of metal as well. The patentee thus describes the invention:

"My invention is particularly applicable to bearing supporting structures, adapted to carry shafts in damp or exposed positions, or under water, and is particularly useful in such machines as centrifugal pumps, step bearings, flotation, and other mining machinery.

"In this class of machinery it is very difficult to secure or maintain lubrication with any oil or grease, and with the ordinary form of bearing, a shaft journal is quickly and frequently destroyed by friction or grit carried by water.

"In a preferred form of my invention I employ a hard rubber or other suitable sleeve within which is formed a relatively soft rubber spiral, serving as a bearing surface on which the shaft is adapted to rotate, and I supply water or other suitable lubricant around the rubber spiral and around the rotating shaft. The use of rubber or

other resilient or yielding material for bearing purposes may be distinguished from metallic bearing surfaces due to the fact that it is flexible, resulting in an equalization of support over the entire bearing surface. When this bearing surface is wetted, a relative freedom from friction is apparent. Furthermore by the use of rubber or other resilient material for a bearing surface, sand or grit will not embed itself therein as is the case with a metal bearing where the metal surface acts as a tool-holder for sand, thereby causing a scoring and cutting of the shaft by sand.

"It will be noted that these objects are accomplished by providing a flexible water resisting surface on which the shaft journal is adapted to operate, and constructing and assembling the parts such that a water film is established and maintained between the shaft journal and the bearing surface. By arranging the bearing material in spiral form having journal spaces exposed between the spirals so that the wetted surface is constantly established on the journal, the said wetted surface is carried as a film and effectually lubricates the journal during its period of rotation on the bearing surface. Moreover, any grit or foreign material is removed from the journal as it rotates within the spiral and is scoured off by the edges of the bearing material, and thus retained within the spiral channel on each side of the said bearing material and carried away by circulating water."

This patent discloses the use of water lubricated soft rubber in a bearing to support the journal of the shaft. The claims of the patent are not as broad as this disclosure of the specifications. Each of the eight claims of the patent 1,376,043 refers to and incorporates the spiral of rubber or other elastic material on the journal as part of the claim. It was evidently thought by the inventor when the claims of this patent were formulated that the idea of a screw shaped support in a bearing by which the lubrication for the journal could be forced through the bearing was new; but it is now conceded that the use of channels for the circulation of lubrication in a bearing is not new and that the use of a spiral on the journal for that purpose did not involve invention. Indeed, we find lubrication by means of a spiral paper bearing on a journal set out as early as December 12, 1871, in a patent (No. 121,804) issued to Eliza D. Murfey. In view of plaintiffs' concession with regard to this lack of patentable novelty in the spiral on a journal or bearing it is unnecessary to consider the matter further.

The claims of patent 1,376,043 are not confined to the use of rubber. In claims 1 and 2 we have a claim for a spiral for "a bearing surface of resilient or yielding material." In each of the other six claims the use of a spiral rubber is specifically claimed. Hence, the claimed use of rubber is only when used in spiral form.

In order to consider the effect of this earlier patent upon the later patents, Nos. 1,416,988 and 1,510,804, we quote from the patent this statement of the purpose and nature of invention claimed in 1,416,988:

"My invention relates to bearings for supporting shafts or other rotating members, and has for its principal object the supporting of shafts in wet locations and of machinery adapted to vibration, or in which the ordinary means of support and lubrication is inadequate. It is particularly adapted to mining machinery although generally applicable also in a much wider field.

"Some of the objects of my invention are the maintenance of alignment and minimum wear of the parts, the maintenance of perfect bearing and journal surfaces with the least amount of frictional effort and the cool and efficient operation of the parts.

"These objects I attain by providing a plurality of bearing surfaces of rubber or other elastic material, which collectively support the shaft journal and which are fitted into a supporting structure as a well known bearing sleeve or pedestal. I provide water or other lubrication around the bearing surfaces, so that the journal surface is wetted thereby and a water film is established and maintained between the bearing surfaces and the shaft journal.

"A few of the advantages derived from the use of rubber or other elastic material for bearing purposes are the minimum of wear; the equalization of support over the entire bearing surface resulting from the flexibility of rubber; the freedom from friction when a water film or other suitable lubricant is maintained between the bearing surface and the shaft journal; and the relatively long life of rubber in the presence of water. Other objects will appear from the drawings and specification which follow.

"Furthermore, by the use of rubber or other elastic or yielding material for a

bearing surface, sand or grit will not embed itself therein as is the case with a metal bearing where the metal surface acts as a tool-holder for the sand, thereby causing the sand to score and cut the shaft."

The claims of this patent are very broad and are shown in the margin.[1]

In the application for patent No. 1,510,804 the disclosures are almost identical with the other two applications and refer to two copending applications (one of which, 1,376,043, was not in fact copending) the patent having been granted previously) for patents Nos. 1,376,043 and 1,416,988 for additional showing as to the invention and are based largely upon the idea of attaching the spiral to the journal of the shaft as in 1,376,043 instead of to its bearing, as in 1,416,988. It is stated in this patent (1,510,804): "The essence of the invention is the elastic surface of the shaft journal channeled for lubricant and this desired result may be accomplished in a variety of forms."

*What, if anything, did Sherwood invent?*

An inspection of the patent drawings in the three patents issued to Sherwood, a consideration of specifications in all the patents and of the claims in patent 1,376,043, indicates that plaintiff conceived his invention to be in the structure which permitted the lubrication of soft rubber surface in contact with steel or other metal in a bearing by securing the free flow of water through the bearing in large quantities, through the channel provided by the use of spiral bearings of elastic material and the forcing of such flow by the screw action of the spiral bearing, such form being called for by the use of soft rubber as the supporting surface for the shaft. It is clear

that the most difficult problem was one of lubrication involved in the use of a bearing supporting the relatively heavy weights of the shaft and its attachments on soft rubber which would be in direct contact with the revolving shaft or, if on the shaft, with the stationary bearing, and therefore subject to the frictional resistance resulting from the intimate contact of the compressed rubber with the metal compressing it and the consequent tendency of the surfaces to adhere.

In patent 1,376,043 the claims all include the spiral form for the soft rubber bearings. No claim is made for the use of soft rubber in the bearing except in that form. The failure to claim invention in the use of soft rubber in the bearing in other forms or in the journal in frictional contact with the revolving shaft, or bearing, as the case might be, would have abandoned or dedicated that discovery to the public (Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 401, 46 S.Ct. 324, 325, 70 L.Ed. 651), were it not for the fact that the application which resulted in patent 1,416,988 was copending and in that patent a definite claim is made to cover the use of rubber as the supporting surface in frictional contact with the revolving shaft. Assuming, as the plaintiffs contend, that there was invention in the use of water lubricated soft rubber as a supporting material in frictional contact with the metal of the shaft or of the bearing, the fact that the inventor did not claim his invention in his application for patent 1,376,043 and did claim it in his copending application for patent 1,416,988 and in the later application for patent 1,510,804 operated as a withdrawal of the tentative dedication to the

1 "I claim: 1. In a bearing, a plurality of surfaces of rubber adapted to support a shaft and space between such surfaces for lubricant.

"2. In a bearing a plurality of surfaces of rubber adapted to support a shaft, space between such surfaces for liquid, means for supplying such liquid, and means for packing the shaft and bearing to prevent leakage.

"3. In a bearing, a rubber bearing surface adapted to support a rotating shaft and means for circulating a liquid between the shaft and bearing surface.

"4. In a bearing, a rubber member adapted to support a journal and a recess in said member for lubricant.

"5. In a bearing, a plurality of surfaces of elastic material adapted to sup-

port a shaft, and space between such surfaces for lubricant.

"6. In a bearing, a bearing surface of rubber having a channel formed on its surface adapted to pass lubricant therethrough.

"7. In a bearing, a bearing surface essentially of rubber and a recess in said surface for lubricant.

"8. In a bearing, a bearing surface of rubber and means for passing a lubricant through said bearing.

"9. In a bearing, a bearing surface essentially of rubber and means for passing a lubricant through said bearing.

"10. In a bearing, a bearing surface of elastic material and means for passing a lubricant through said bearing."

public which would have resulted had the first patent been applied for more than two years before application was made for the later patents. Eastern Paper-Bag Co. v. Standard Paper-Bag Co., C.C., 30 F. 63, 65; Shipp v. Scott School Tp., Montgomery County, Ind., 7 Cir., 54 F.2d 1019; Eclipse Machine Co. v. J. H. Specialty Mfg. Co., D.C., 4 F.Supp. p. 306, 314. We agree with the 'plaintiffs that the failure to claim the use of water lubricated soft rubber in the application for patent 1,376,043 does not prevent the inventor from making that claim in the copending application for patent 1,-416,988. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S.Ct. 310, 38 L.Ed. 121; Traitel Marble Co. v. U. T. Hungerford, etc., Co., 2 Cir., 22 F.2d 259, 260; In re Peiler, Cust. & Pat.App., 48 F.2d 405, 407; In re Peiler, Cust. & Pat.App., 64 F.2d 984, 986; 48 C.J. 48, § 50, and cases cited.

With reference to the contention that application for patent 1,510,804 shows no invention over application for patent 1,416,-988 because the latter application merely called for reversal of rubber or elastic part from the bearing to the journal thus using the same material in substantially the same way on the journal, the argument of the appellees and cross-appellants on this subject involves the conclusion that application for patent 1,416,988 would cover the use of rubber either on the journal or in the bearing and, consequently, that patent 1,-510,804 was entirely unnecessary as the invention was already covered by patent 1,-416,988. The plaintiffs contend that the application of rubber to the journal rather than to the bearings was so much simpler that it involved invention to provide for the placing of rubber upon the journal.

The application for patent 1,510,804 makes no claim based upon the greater simplicity in structure resulting from the use of rubber on the journal instead of in the bearing, and does not disclose the method of application of the rubber to the shaft. It is assumed in the patent that ordinary mechanical skill would be sufficient to place the rubber upon the journal of the shaft when it was once indicated that this was desirable. The plaintiffs, in support of their claim that invention was involved in the idea of placing rubber on the shaft, as distinguished from the bearing, points to the application of rubber to the drill stem in an oil drilling outfit, as compared to the lining of the casing or sections thereof with rubber, and in effect claims that in such a case it involves inventive genius to decide to put rubber on the drill stem rather than on the walls of the casing. This argument overlooks the fact that it is quite clear that such a construction was not in the mind of the inventor at the time he filed his application for the shifting of the rubber support from the bearings to the journal and is not taught by the patent.

Plaintiffs concede that the use of channels for lubrication in the bearing or on the shaft is not new and that the use of such spiral channels in the form provided by the three Sherwood patents did not constitute invention. Plaintiffs' claim is that the use of water lubricated soft rubber as a support for the revolving shaft in a machine constitutes invention, and that the discovery that soft rubber could be so used and so applied was the invention of Sherwood. If that is true it is disclosed by each of the three applications for the three patents issued to Sherwood and, consequently, the third patent, No. 1,510,804, did not constitute invention over the second patent 1,416,988, and 1,416,988 did not constitute invention over 1,376,043, although, as has been stated, the fact that applications 1,376,-043 and 1,416,988 were copending, authorized issuance of 1,416,988, although the broad claims of 1,416,988 might have been claimed in the application of 1,376,043.

*The use of hard rubber:*

We agree with the master and the trial judge in the conclusion that the prior art above referred to disclosed the use of hard rubber in a water lubricated bearing and that unless invention would result from substituting soft rubber for hard rubber the patents in question were anticipated by the prior art. The term "hard rubber" is applied to a product resulting from vulcanizing an equal mixture of sulphur and rubber with occasional addition of other material. See patent No. 8,075 issued May 6, 1851 to Nelson Goodyear. As the result of this process the rubber loses its principal characteristics of elasticity and resilience and the product, although retaining some degree of elasticity, approaches the rigidity of metal. It might be quite as well called "hard sulphur" for it is a distinct and definite product with characteristics quite distinct from that of rubber.

*Did the use of soft rubber lubricated by water involve invention?*

It is true that the characteristic of vulcanized rubber has long been known,

that the skidding automobile demonstrated the fact that with water lubrication on the highway the rubber of an automobile tire supporting a heaving automobile showed little frictional resistance. The patent office, however, decided that the use of water lubricated soft rubber to support a shaft constitutes invention.

The real problem of using soft rubber in the bearing or on a journal results from the intimate contact with the metal which it supports. This contact leaves no space for a lubricant on the surface which supports the weight. Sherwood believed that he could force water between the rubber and the steel and thus make practical application of the desirable qualities of rubber in the structure. We agree with the trial court and with the patent office that this constituted invention and that patent No. 1,416,988 is valid as against the claim of no invention.

While it is true that the substitution of one substance for another does not ordinarily constitute invention, we cannot say beyond a reasonable doubt that this use of soft rubber did not constitute invention over the use of hard rubber, as we would be required to do, to declare a patent therefor invalid because anticipated by the patents for hard-rubber water lubricated bearings.

We therefore conclude that patent 1,-416,988 is valid, and that although disclosed but not claimed by application for patent 1,376,043 copending the patentee was nevertheless entitled to claim the use of soft rubber in his copending application (48 C.J. 48, § 50, and cases cited above on this point); but having claimed the use of rubber in the application for patent 1,416,988 a second patent therefor could not be properly issued and we agree with the appellees and cross-appellants that this later patent, No. 1,510,-804, is invalid for want of invention over No. 1,416,988.

*Disclaimer:*

■ The appellees and cross-appellants claim that if the patents in question are confined to the invention for the use of soft rubber the claims of the Sherwood patents in suit are broad enough to include hard rubber as well as soft rubber and that the plaintiffs being advised by the prior art disclosed at the trial in 1930 and by the statements of their own counsel at the time of the trial that the patent was confined to soft rubber was under the duty of disclaimer as to hard rubber, although the litigation

was still in progress. Before the master's report was made such a disclaimer was filed as to patent 1,416,988. No such disclaimer was filed as to 1,510,804. The court sustained both patents as to soft rubber, erroneously assuming that the disclaimer applied to both. The cross-appellants urge that the delay in filing this disclaimer invalidates both the patents under the provisions of 35 U.S.C.A. §§ 65, 71. See Judge Mack's decision in Otis Elevator Co. v. Pacific Finance Corp., 9 Cir., 68 F.2d 664, 665. We conclude that no disclaimer was necessary in either case. Patent No. 1,-376,043 showing the use of both a hard rubber bearing and a soft rubber spiral attached to the journal makes it clear that the applicant was claiming invention only in the use of soft rubber on the journal as the bearing surface.

In the copending application for 1,510,-804, referring specifically to the other two applications, the claimant makes it clear that he was describing elastic or soft rubber in all his claims. We conclude that it is not necessary for the plaintiffs to have filed a disclaimer as to the use of hard rubber bearings in patent 1,416,988 because the patent in its entirety shows that it was not intended to claim the use of such rubber as an invention. The use of the word "rubber" in the claims is necessarily explained and limited by the patent drawings and specifications.

■ The cross-appellants further claim that if the patents in suit be limited to the use of soft rubber the patents are void because of the failure to disclose the degree of softness or the method of manufacture of the soft rubber. It is assumed in this contention that there is rubber so soft that it would not be usable according to the teaching of the patents. This claim of invalidity is not made in the pleadings and we think it is hypercritical. There is nothing in evidence to show that a rubber manufacturer would not be able to produce rubber of a degree of hardness necessary to support the shaft in a journal if he were advised as to the weight involved in the structure. It is a fair assumption, in the absence of any pleading or evidence to the contrary, that this can be done as a mere matter of mechanical skill. This attack upon the patents fails.

*Infringement:*

■ The plaintiffs' charge of infringement is based upon the validity of patent 1,510,804

which we hold to be invalid. The Master and the trial court held both patents invalid and not infringed. The plaintiffs filed a petition for rehearing in which it is said: "This petition is directed to the Master's said finding that certain claims of said patent No. 1,416,988 are invalid and that, for the purposes of this petition, no question is here raised with respect to the finding that said patent is not infringed; likewise no question is here raised with respect to the second Sherwood patent [1,510,988] in suit."

The trial court, in granting the petitions for rehearing, found that both plaintiffs' patents were valid and not infringed. With reference to the question of infringement the court in its memorandum opinion on motion for rehearing said "that the issue of non-infringement being so clearly determinable against the patent claims of plaintiffs, the matter of the validity of the claims of plaintiffs, becomes almost a secondary issue."

It is not claimed that the plaintiffs are bound on this appeal by the waiver in the petition for rehearing in the trial court. Consequently, plaintiffs have maintained the validity of patent 1,510,804 and attacked the finding of non-infringement as to this patent while conceding that its patent 1,416,988 was correctly held to be not infringed. Under the view that we have taken, the argument as to infringement predicated upon the validity of 1,510,804 would be equally applicable to 1,416,988 had the plaintiffs anticipated our conclusion that 1,416,988 covered the claims of 1,510,804. In view of this situation, notwithstanding the fact that plaintiffs disclaim any intention to urge that its earlier patent, 1,416,988, was infringed, we think it appropriate to say that we agree with the special master and the District Court in the conclusion that neither one of these patents was infringed by the cross-appellees in their use of rubber on the drill stem of a rotary drill. We quote with approval the statement of the trial judge in his memorandum opinion as follows: "The plaintiffs have patents which relate to the use of rubber shaft bearings of machines. Those bearings are friction bearings in which the load is practically constant. Conceding an analogous art, the use that they serve is totally distinct and separate from the use to which the device of patentee Bettis is put, or designed to be put. Bettis' device carries no uniform or constant load; it is a mere buffer, not at all times in contact with the metal casing opposite to it during well drilling operations; it is not a bearing in any true sense. Under the facts of this case, because of the unrelated uses, or designed uses, the subjects may be viewed as separate and distinct."

*The Bettis and Perry patent, No. 1,-573,031:*

This patent was before this court in Bettis v. California Mfg. & Eng. Co., 9 Cir., 41 F.2d 458. We there held that the patent was not infringed and that it was unnecessary to determine whether or not the patent was valid, both parties having requested that if we found no infringement findings and decree should be confined to that conclusion.

In determining the question of whether or not there was invention involved in applying soft rubber collars to a drill stem in order to protect both the drill stem and the casing from contact due to whipping or otherwise, it is necessary to consider additional patents and prior art constructions. On August 8, 1922 patent 1,424,964 was issued to A. W. Wellington and A. F. Ryan upon an application filed July 5, 1922. This patent provided for the use of a cylindrical rubber buffer upon a vertical stem of a centrifugal pump extending from the pump in a well to the surface. The patent shows a number of these rubber collars or buffers at various points along the pump stem revolving with it in a sleeve of slightly larger diameter attached to the well casing by arms extended to it. The patent discloses that the patentees had in mind the protection of the pump stem and casing from collision due to the whipping of the shaft and also contemplated the lubrication of the rubber revolving in its metal collar by the water brought up by the pump. The patentees state that their patent relates particularly to deep wells and centrifugal pumps. The patent states: "It is an object of our invention to provide a suitable means for limiting the swinging movement of the pump shaft. It is a further object to provide a suitable support for a pump shaft that will permit its free rotation with a minimum amount of friction and vibration thereby prolonging the life of the shaft and support." It is stated that the "bumper" is preferably formed of resilient material such as vulcanized rubber.

A patent was issued March 1, 1927, upon application filed February 4, 1924 (No. 1,619,728), to A. C. Hopkins for a cushion joint for rotary drill pipes. This shows

a cylinder of rubber surrounding the drill pipe at the joints. It differs from the Bettis patent only in the method by which it is secured to the drill pipe and the fact that it covers the joint instead of being immediately adjacent thereto. The object and purpose of the rubber in each case is the same. The patent states:

"When the string becomes very long, it is so flexible that its rotary motion causes it to whip against the casing and wear holes through it where the couplings and tool joints contact with it.

"It is therefore an object of my invention to provide cushions, which are preferably made of rubber, on the drill pipes at suitable intervals and at suitable positions to practically eliminate the wear on the casing."

It also appears that as early as September, 1921, hollow rubber cylinders 3-1/8" in diameter and 1-11/16" internal diameter and 3-3/4" in length, and other cylinders of slightly less size, were manufactured by the Goodrich Rubber Company to be used on the pump stem of the deep wells and that they were so used more than two years before Bettis and Perry applied for their patent in suit, which was applied for January 5, 1925, and issued February 16, 1926. The prior art referred to completely anticipated the Bettis patent and the alleged construction therein described with the single exception that the Bettis patent contemplated the use of rubber sufficiently elastic to be placed on the drill pipe by expanding its internal diameter so that it could be slipped over the coupling of the drill pipe, and after reaching its location immediately above the coupling would be still sufficiently distended so its elastic pull would secure it tightly to the drill pipe. The diameters given in the patent drawing will illustrate this. The internal diameter of the rubber collar in a state of rest is 6", its external diameter 8". The external diameter of the drill coupling is 9", and of the drill casing 7", so that in reaching its place on the drill pipe its internal diameter must first be extended from 6" to 9" and then contracted to 7", leaving the rubber in the state of tension due to the fact that it is still extended an inch beyond its diameter when at rest.

The use of the elasticity of rubber to grip the pipe and to pass it over the coupling does not arise to the dignity of invention. This view we think is supported by decision of the Supreme Court in the rubber pencil eraser case. It was there held that the use of the known characteristics of elastic rubber to pass the eraser over and to grip the end of the lead pencil and thus to secure the rubber eraser in place did not involve inventive genius. Rubber Tip Pencil Co. v. Howard, 20 Wall. 498, 87 U.S. 498, 22 L.Ed. 410.

We conclude:

1. That Sherwood patent 1,416,988 is valid.

2. That Sherwood patent 1,510,804 covers the same ground as 1,416,988 and is invalid because of double patenting, as the later would infringe the earlier.

3. That the rubber collar manufactured by the Patterson-Ballagh Corporation, cross-appellant, under the Bettis and Perry patent, No. 1,573,031, does not infringe Sherwood patent 1,416,988.

4. That the Bettis and Perry patent 1,573,031 is invalid.

The decree is modified in accordance herewith.

None of the parties is to have costs.