## BENOIT v. JUNE DAIRY PRODUCTS CO., Inc.

### No. 2594.

District Court, D. Connecticut.

Oct. 29, 1937.

Banning and Banning, of Chicago, Ill., and Rockwell and Bartholow, of New Haven, Conn., for plaintiff.

Allen & Allen, of Cincinnati, Ohio, and Watrous, Hewitt, Gumbart & Corbin, of New Haven, Conn., for defendant.

THOMAS, District Judge.

This is a suit for relief by injunction and damages for the alleged infringement by the defendant of two patents. The first is No. 1,880,074 issued September 27, 1932, to Joseph L. Coyle, assignor, on an application filed June 21, 1928, for an improvement in "Egg Cartons." The second is No. 1,931,304, issued October 17, 1933, to Louis Sugerman, assignor, on an application filed February 3, 1933, for an improvement in a "Holder for Eggs and the Like." Plaintiff stipulated that he would rely on claim 5 of the Coyle patent and on claim 3 of the Sugerman patent.

In defendant's answer specific defenses are pleaded which attack the validity of both patents.

As to claim 5 of the Coyle patent, No. 1,880,074, the defendant alleges in paragraph 12 of its answer that: "The purpose of said disclaimer was to change the scope and construction of said letters patent whereas the remedy permitted by Statute for the correction of a defective and insufficient patent is by re-issue, that said disclaimer was illegal and void, and that by said disclaimer plaintiff sought to enlarge the scope of said patent, wherefore said patent is invalid and void."

As to claim 3 of the Sugerman patent, No. 1,931,304, the defendant alleges in paragraph 21A of its answer that: "All material parts of the invention set forth and claimed in the said Sugerman patent were dedicated to the public by said Sugerman by reason of his having shown and described but not claimed the same in his letters patent No. 1,793,026, dated February 17, 1931, as admitted by said Sugerman by reason of the last statement in the first paragraph of said letters patent, wherefore the said patent is void, or that, in the alternative, the said Sugerman patent is void for double patenting since the claims thereof differ in no substantial or inventive particular from the claims in the said Sugerman patent No. 1,793,026, dated February 17th, 1931."

On May 29, 1937, defendant filed a motion under Equity Rule 29 requesting the court to separately try and determine the defenses set up by paragraphs 12 and 21A of defendant's answer quoted supra. Having heard the parties with respect to these special matters an order was entered on June 29, 1937, granting the motion. Counsel for the respective parties stipulated that the cause be determined on briefs without oral hearing.

**1. Coyle Patent, No. 1,880,074.**

The claim relied on by plaintiff reads as follows: "5. Packaging means for eggs comprising, in combination, a cellular filler including upright cross-members, a tubular carton or wrapper adapted to receive the filler and being open at an end, and means for retaining the filler against relative movement lengthwise the carton in either direction, comprising a plurality of tabs formed on a carton wall or walls, one adjacent one face of a cross-member and another adjacent the opposite face of a cross-member, to cooperate therewith as stops."

On January 12, 1935, the following disclaimer was filed in the Patent Office by the assignee, which was directed to claims 4 and 5 of the patent, and in the following words:

"By restricting the term 'cellular filler' to an interconnected separately constituted structure affording a plurality of separate cells, each defined by certain walls configured to embrace the contents of the cell.

"By restricting the term 'upright cross members' to portions of the filler which afford inwardly extending protrusions constituting the transverse components of the individual cell walls.

"By restricting the term 'tab' to a portion of the enclosure wall which is struck inwardly into the space adjacent to a cross member and in such relation thereto as to afford a physical abutment or obstruction to the cross member which being an interconnected constituent of the filler affords provision against longitudinal withdrawal of the filler as a whole.

"By excluding from the language of said claims any construction in which the means for preventing longitudinal withdrawal of the filler from its enclosure necessarily includes a string, band or other device which is additional or supplemental to those portions of the structure which within themselves combine to provide the cell forming filler and the surrounding carton or wrapper."

Revised Statutes, § 4917 (35 U.S. C.A. § 65), provides, as a condition for a disclaimer, that the overclaiming must have been through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention. The declarant is not required in the Patent Office to affirmatively show the existence of the statutory conditions and the Patent Office never inquires into the actual existence of the conditions

when recording the disclaimer. Inasmuch as nothing has been called to my attention which would prove that the conditions have not been fulfilled, I must take it for granted that the overclaiming was through inadvertence, accident, or mistake and without any fraudulent or deceptive intention. However, the defendant will have opportunity, by testimony or otherwise, to prove if it can, its allegations in this respect at the trial of the case, because I do find, as will hereinafter appear, that the disclaimer is valid.

Defendant alleges that by his disclaimer plaintiff sought to enlarge the scope of the patent. In order to intelligently deal with this question, the device defined by the claim in issue must be briefly described. The invention relates to a carton for packaging eggs and the like. This carton comprises a wrapper which is of tubular shape in its final form and is open at least at one of its ends. The wrapper is suited to receive a cellular filler which includes upright cross-members. Into the cells are adapted to be placed eggs or similar articles. Means are provided for retaining the filler against relative movement lengthwise in the wrapper in either direction, such means comprising two tabs formed on one of the walls of the wrapper, one tab abutting against one face on one of said cross-members and the other against the opposite face of the last-mentioned cross-member whereby said tabs act as stops. Both the drawings and the specification of the patent bear out the description of the device as stated in the preceding paragraph hereof. The specification recites further details. For instance, there is the partition 20 which forms part of the cellular filler and serves to divide the same in combination with the outer partition D into two lengthwise rows of compartments or cells. That the device was constructed for receiving eggs appears from the specification and also from Fig. 3 of the drawings of the patent in suit. For reasons which do not appear from the specification nor from the file wrapper of the patent, the assignee of the inventor entered his disclaimer. It is immaterial whether this was done in view of the prior art or printed publications because the only questions are: (1) Does the specification bear out the disclaimer, and (2) Is the disclaimer of such character that it does not enlarge the scope of the claim.

The disclaimer consists of four separate sections which will be taken up in their order.

(A) While original claim 5 specifies a cellular filler including upright cross-members, the disclaimer limits the cellular filler to an element which does not form part of the wrapper, that is to say, to a filler which is not made integral with the wrapper, and further limits it to a structure consisting of a plurality of cells each of which is defined by certain walls so arranged as to embrace the contents of the cell. This construction is clearly described in the specification.

(B) Original claim 5 calls for a cellular filler including upright cross-members, and the disclaimer limits the term "upright cross-members" to portions of the filler which afford inwardly extending protrusions constituting the transverse components of the individual cells. This limitation is supported by the specification and the drawings of the patent.

(C) Original claim 5 comprises, as one of its elements, a plurality of tabs which are formed on one of the walls of the wrapper, and the disclaimer restricts the term "tab" to a portion of the inclosure wall which is struck inwardly into the space adjacent to a cross-member and in such relation thereto as to afford a physical abutment or obstruction to the cross-member which, being an interconnected constituent of the filler, affords provision against longitudinal withdrawal of the filler as a whole. That this restriction is based upon the specification and drawings goes without saying.

(D) The original claim specifies only the wrapper and the means for preventing longitudinal withdrawal of the filler from the wrapper. In the fourth section of the disclaimer the patentee excludes a "string, band or other device which is additional or supplemental to those portions of the structure which within themselves combine to provide the cell forming filler and the surrounding carton or wrapper." The specification does not mention a string or similar element for the purpose stated but, in order to exclude an extraneous element from the elements of the structure, it is not necessary that the specification refer to such extraneous element.

The second point raised is that the disclaimer broadens or enlarges the scope of the claim, while, as a matter of law, a disclaimer must limit the claim. By statute a disclaimer is proper only when the patentee has claimed more than he had a right to claim and the disclaimer is designed for the purpose of restricting the monopoly granted by the patent and not for the purpose of ex-

panding the same. I am not unmindful of the fact that a disclaimer which restricts the scope of a claim is not necessarily valid and proper. Having given due consideration to the four sections of the disclaimer, I find that the scope of the claim is limited thereby and that the disclaimer is valid because there is no material change in the character of the invention nor do I find an enlargement of the claim. It is possible that this disclaimer is only of the precautionary curative type and the terms of the disclaimer either belong to the category of implied limitations or to limitations which exclude assertion of equivalency by limiting the device to the particular class of articles described in the specification, but the disclaimer goes no further than to limit the claim to the disclosure, abandoning any implied and undescribed scope. Under these circumstances, I am without justification in summarily dismissing the bill on the basis of the present motion. While it is true that all the changes that have been made by the disclaimer could also have been made by reissue, it must nevertheless be left to the plaintiff to decide which course he cares to pursue in order to correct the defects in his patent.

2. Sugerman Patent, No. 1,931,304.

The record shows that the earlier Sugerman patent, No. 1,793,026, was issued February 17, 1931, and that the later Sugerman patent (the one in suit) was granted October 17, 1933, on an application filed February 3, 1933. Hence it will be seen that the application for the second Sugerman patent was filed within the two years allowed by statute after the grant of the first Sugerman patent.

On page 1, lines 12 to 17, inclusive, of the specification of the Sugerman patent in suit it is stated: "The features of invention hereinafter set forth and claimed were first disclosed in my application filed December 30, 1926, Serial No. 157,888, subsequently patented as No. 1,793,026 under date of February 17, 1931."

The invention described and claimed in the Sugerman patent in suit is clearly described but not claimed in the first Sugerman patent, reference being had to Figs. 11 to 19, inclusive, of the drawings and the specification relating thereto. Defendant contends that the invention set forth and claimed in the Sugerman patent in suit was dedicated to the public by the inventor by reason of his having shown and described but not claimed the same in his patent No. 1,793,026, dated February 17, 1931.

The first Sugerman patent, No. 1,793,026, describes one generic and two specific inventions. The generic invention embodies an egg carton consisting of two individually complete sections, said carton having a top, a bottom, two side walls, and two end walls, the side and end walls being joined to form a continuous band, said carton being severable into its two component sections by severing the band along lines at the center of the two end walls. This generic invention is fully claimed in the first Sugerman patent. One of the specific inventions is disclosed in Figs. 1 to 10, inclusive, of the first Sugerman patent. It consists of a carton of the type identified as the generic invention, with the exception that the carton is made of two individually complete and substantially similar sections having overlapping portions, so that the two sections are severable by tearing the overlapping portions. In addition, each of the two individual complete sections has made integral therewith tongues for dividing the carton into a plurality of cells. This specific form is also fully claimed in the first Sugerman patent. The second specific invention consists also of a carton that is severable into two sections, but the cells are not made integral with the carton but form an independent contrivance which is adapted to be placed into the carton. This specific invention was not claimed in the first Sugerman patent, but is claimed in the Sugerman patent in suit, for instance, by the claim in issue which reads as follows: "3. In combination, a one-piece filler having walls which define cells, means independent of the filler providing an enclosure therefor, and means forming a line of severance through the filler and enclosure whereby to define a plane of separation for the filler and enclosure into two cellular components each complete in itself."

It is obvious that the invention defined by claim 3 is a separate and segregable invention. Had it been retained in the application which resulted in the first Sugerman patent, cancellation of the claims covering the same would have been required by the Patent Office because the invention is divisible from the invention of the first Sugerman patent. Under the law, Sugerman could have filed a divisional application for the independent subject matter at any time while his first application was pending. He failed to do so, and so the question now pre-

56

sented is whether an inventor, who applies for a patent upon a certain structure and discloses but does not claim certain novel features thereof, may apply within the statutory two-year period for a new patent covering the disclosed but unclaimed novel features in the earlier application, when it appears that the second application was made after the first patent had been issued.

The answer to the question propounded involves a consideration of possible waiver and dedication to the public on the inventor's part. Generally speaking, the filing of an application for a patent which discloses novel features wthout making claims to all of the novel features disclosed, and the acceptance of a patent thereon, gives rise to the legitimate inference that the applicant intended to dedicate to the public the unclaimed novel features of his invention. If the inventor does not make application within the time prescribed by statute, he is barred from ever obtaining a patent. But we are here dealing with a closer question. Did the inventor, by failing to insert claims for certain novel features disclosed in the first application, waive his right later to apply for a patent on the previously disclosed but unclaimed novel construction? And did the fact that his previous action, resulting in the issuance of a patent, in any way affect the question of waiver or dedication? It seems that there is a limitation to the inference of dedication which arises when the inventor within the time fixed by statute files another application for the unclaimed novel features referred to. The statute fixes the time within which applicant may make application for a patent for his invention, and, as long as he acts within the time fixed, he is strictly within his legal rights. In Eastern Paper-Bag Co. v. Standard Paper-Bag Co. (C.C.) 30 F. 63, on page 65, it was held that the description of a process in an application for a machine patent does not constitute an abandonment or dedication to the public of such process, so as to estop the inventor from subsequently obtaining a patent for the process if applied for in two years, and Judge Colt

pointed out the rule with reference to reissues and disclaimers. He said: "The invention of a machine, and a process employed in the use of the machine, being different things, it is difficult to see how the application for a patent on one should operate as an abandonment of any claim to a patent on the other: provided, of course, the application for the second patent is made before the statutory forfeiture of two years' prior use has run. This view is in harmony with the decisions of the circuit courts where the question has arisen."

In Shipp v. Scott School Tp., 54 F.(2d) 1019, the Circuit Court of Appeals for the Seventh Circuit held that an inventor obtaining patents on applications disclosing, without claiming, certain novel features, was entitled, within two years, to apply for a new patent covering disclosed but unclaimed features.

See, also, McKay v. Dibert (C.C.) 5 F. 587; Vermont Farm Machine Co. v. Marble (C.C.) 19 F. 307; Eastern Paper-Bag Co. v. Nixon (C.C.) 35 F. 752; and Cahn v. Wong Town On (C.C.) 19 F. 424.

Defendant relies on a later case, Ely Norris Safe Co. v. Mosler Safe Co. (C.C.A.) 62 F.(2d) 524, to sustain his point. But, the question decided in that case differs from the one here under consideration in that in the last-mentioned case the second patent was for the same invention, or one which was not segregable from that disclosed in the first patent. Therefore, the Norris v. Mosler decision has no application to the instant case, which involves two separable inventions.

I conclude that the claim in suit is for a device entirely separate, distinct, and different from any of the claims of the earlier patent so that the charge of double-patenting must also be dismissed.

Defendant's motion to dismiss on the face of the bill must be and hereby is denied. Submit decree accordingly properly consented to as to form. The findings of fact and conclusions of law are sufficiently stated in the opinion.