662

32 C.C.P.A.(Patents)

### In re PHILLIPS.

**Patent Appeal No. 4958.**

Court of Customs and Patent Appeals.
Feb. 7, 1945.

Rehearing Denied April 9, 1945.

Theodore H. Lassagne and James M. Naylor, both of San Francisco, Cal., and Charles E. Riordan, of Washington, D. C. (N. D. Parker, Jr., of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

On November 29, 1941, appellant filed an application for a patent relating particularly to a mounting strip for sheets, cards, prints and the like, of the general character disclosed in his prior patent No. 2,248,582, granted July 8, 1941, upon an application, Serial No. 338,479, filed June 3, 1940.

All of the claims, four in number, were rejected by the Primary Examiner upon the following cited references: Fales, 359,-141, March 8, 1887; Bristol, 1,023,715, April 16, 1912; Carpenter, 2,030,135, February 11, 1936; Phillips, 2,248,382, July 8, 1941.

Claim 2 is illustrative of the subject matter of the claims and reads as follows:

"2. A mounting strip of the character described comprising an elongated member, a deposit of a normally tacky pressure-sensitive adhesive in a zone adjacent one edge of said member, means extending longitudinally of said member constituting an alignment guide for sheets and the like to be mounted on said strip, a non-adhesive zone between said alignment guide means and the zone in which said adhesive is deposited, and a peelable cover strip overlying the zone in which said adhesive is deposited and extending over at least a portion of said non-adhesive zone."

The mounting member or stub of appellant's patent comprises an elongated strip of heavy paper or the like with perforations along the side portion whereby the strip may be joined with other strips by means of the spaced loops of a multiple ring binder forming an album. The other side portion of the strip may be coated with a non-hardening adhesive, of which, it is said in the specification, "there are many types and kinds now in use." Between the adhesively-coated side and the other side of the strip, and extending longitudinally of the strip or stub, is an area which is uncoated and colored, which may be utilized as an alining marker for the sheet to be mounted. The adhesive-coated and the clear areas of the stub are covered with a strip of glazed fabric or fabric paper or "Cellophane," which is peeled off when a sheet to be mounted is affixed to the adhesive-coated portion of the stub. It is said in

the specification that the partial coating of the strip provides a free portion for the covering, which can be grasped to remove the same when desired.

The quoted claim sufficiently describes the device defined by the rejected claims.

The Fales patent relates to a temporary binder particularly designed to hold separate leaves. It discloses a series of leaf stubs, each bearing an adhesive along its outer edge to which sheets may be attached to form a book. The portion of the stub which is bound is reinforced to form a stiff backing and has no adhesive. It is said in the patent that the gummed margin "serves as a coating edge by which the position of the leaf may be determined."

The Bristol patent discloses a loose-leaf binder comprising stub leaves, the outer section of which carries adhesive by means of which sheets of paper may be attached. The adhesive portion of the strip is bounded on its inner edge by a printed line to which the sheet is alined.

The Carpenter patent discloses adhesive units partially coated with pressure-sensitive adhesive and a free portion which can be grasped to remove the strip when removal is desired or necessary.

The Primary Examiner rejected all of the claims as reading on the structure illustrated in appellant's patent, and further as unpatentable over the Fales or Bristol references in view of the Carpenter patent.

The Board of Appeals, affirming the decision of the examiner, held that the provision of a space between the alinement guide and the strip of adhesive set out in the claims was taught by the Carpenter patent. The board also pointed out that such space was disclosed in appellant's patent, although not described and claimed.

From that decision appeal was taken.

Appellant contends that the structure defined by the rejected claims is distinct and separable from the invention of his prior patent.

While the specification and claims of appellant's patent do not specifically provide for a space between the alinement guide and the strip of adhesive, as was set out in the rejected claims, such limitation is plainly shown in the drawings of the patent. In fact, the specification and the claims of the patent, particularly claims 5 and 6, together with the drawings, disclose every detail of the rejected claims.

Both of the Patent Office tribunals called attention to those claims, the examiner holding that although they defined a combination of covers and binding stubs or mounting strips the combination was so obviously old that the claims depended for novelty upon the specific stubs claimed. We are of opinion such reasoning is correct and that those claims should, as the Board of Appeals stated, be considered in effect as "stub claims."

In order that the substantial identity between the rejected claims and those claims of the patent may be more readily understood, we quote claim 5 thereof: "5. In a unit for mounting a plurality of prints or sheets, two covers and a plurality of binding stubs flexibly bound between the covers along one edge thereof, each stub comprising an elongated member, a ribbon-like deposit of a non-drying adhesive on one surface of the member longitudinally of one edge portion thereof, said surface of the member having longitudinally of the other edge thereof a colored reinforcing strip forming an alinement guide for prints and sheets to be secured to said stub, and a removable strip arranged upon and covering the adhesive surface of said member and removed in securing a print or sheet to said stub."

It is our opinion that claims 5 and 6 must depend for novelty upon the specific stubs defined therein. The only distinction that might be drawn between the "stub claims" of the patent and the involved claims is the recitation in the latter of a non-adhesive zone between the alinement guide means and the zone covered with adhesive. However, that is a distinction without a difference, for the reason that there is disclosed in the drawings of the patent a non-adhesive zone which is stated in the specification to be colored, so that it forms an alinement guide to the edge of the zone in which the adhesive is deposited.

The reason for providing the non-adhesive space is to permit the protective strip or the sheet which has been attached to the stub to be readily removed without touching the adhesive. That is taught by the Carpenter patent. So, even should the

subject matter of the appealed claims be considered as not fully disclosed in appellant's patent, the rejected claims do not patentably differ from that patent in view of the teaching of the Carpenter patent.

■ Appellant relies upon the decision of this court in the case of In re Carlton, Cust. & Pat.App., 77 F.2d 363. That case has no application here for the reason that it involved a divisional application of the one upon which the patentee's patent issued. In the instant case appellant's patent issued before the present application was filed, and the present application is not a division of the one which matured into his patent.

The limitation of a non-adhesive zone between the alinement guide and the adhesive zone is clearly shown in the patent drawings and could have been described and claimed by amendment under Rule 70 of the Rules of Practice, 35 U.S.C.A. Appendix.

■ Since the involved application was not filed until several months subsequent to the issuance of appellant's patent, what he disclosed and did not claim must be considered dedicated to the public. Ely Norris Safe Co. v. Mosler Safe Co., 2 Cir., 62 F.2d 524; Directoplate Corporation v. Donaldson Lithographing Co., 6 Cir., 51 F.2d 199; Gladding-McBean Corporation v. N. Clark & Sons, 9 Cir., 16 F.2d 50.

In view of what has been stated, it is not necessary that we discuss the second ground of rejection.

We therefore conclude that the patent of appellant and the claims of his present application present no difference in invention, and the decision of the Board of Appeals is affirmed.

Affirmed.