38 C.C.P.A. (Patents)

### Application of BERSWORTH.

**Patent Appeal No. 5780.**

United States Court of Customs and Patent Appeals.

June 5, 1951.

Malcolm N. Rich, New York City (Harry F. Riley, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

WORLEY, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all of the claims, 1 to 6, inclusive, in appellant's application for a patent, serial No. 702,051, relating to a "Method of Producing Carboxylic Amino Acids."

The claims were rejected as unpatentable over two prior patents which had been granted appellant within one year prior to the filing date, October 8, 1946, of the application herein involved. Those patents are:

Bersworth   2,387,735   October 30, 1945.
Bersworth   2,407,645   September 17, 1946.

The rejection by the tribunals below was based on a finding that the subject matter of the appealed claims was disclosed in the prior patents to appellant, and it was held that such disclosure of matters not claimed was dedicated to the public by the issuance of the patents before the filing of the in volved application, notwithstanding the fact that the application was filed within twelve months before the patent became available as a "publication."

Claims 1, 2, and 6 are illustrative, and read as follows:

"1. In the method of producing carboxylic amino acids by condensing formaldehyde with sodium cyanide in the presence of an aliphatic amine in a strongly alkaline solution having a pH above about 9 heated to temperatures within the range 30–100° C, the improvement which comprises condensing the formaldehyde with the sodium cyanide at a reaction temperature within the range 95–99° C while vigorously agitating the reaction solution to maintain a uniform distribution of reactants therein and while excluding atmospheric oxygen therefrom, and at a rate limiting the amount of said condensation product formed at any one instant during the progress of the condensation reaction to that amount which on hydrolysis to a carboxylic acid salt at the reaction temperature is substantially immediately and completely reacted with the aliphatic amine present to form a carboxylic amino acid salt product.

"2. In the method of producing carboxylic amino acids by condensing formaldehyde with sodium cyanide in a strongly alkaline solution having a pH above about 9 heated to a temperature within the range 30–100° C and in the presence of an aliphatic amine having at least one amino hydrogen attached to an amino nitrogen group attached to an aliphatic carbon, the improvement which consists in maintaining a reaction temperature approximating 97° C and within the broad range 95–99° C in the said strongly alkaline solution and add-ing the formaldehyde to the said solution, while vigorously agitating the same to maintain therein substantially uniform dispersion of all reactants therein, at a substantially constant rate relative to the rate of carboxylic acid salt substitution in said amine as will provide at any one instant during the progress of the condensation reaction substantially no excess of unreacted carboxylic acid salt in said solution and while maintaining over the surface of the agitated solution a low positive pressure of ammonia in its gaseous phase sufficient to exclude atmospheric gases from contact with the said surface.

"6. The method of producing carboxylic amino acids which comprises condensing formaldehyde with sodium cyanide in the presence of an aliphatic amine in a vigorously agitated strongly alkaline solution having a pH above about 9 protected from reaction with atmospheric gases by a continuously maintained low positive pressure of ammonia gas at a substantially constant high reaction temperature within the range 30–100° C at which the said condensation reaction and the hydrolysis reaction of the condensation product to a carboxylic acid salt occurs substantially instantaneously and simultaneously while limiting the amount of said carboxylic acid salt to an amount substantially instantaneously reacted with the amine."

The process covered in the patents and the application is described in the decision of the board as follows:

"The alleged invention herein involved relates, as do the patents, to a method of preparing ethylene diamine carboxylic acids. The reactions in all three disclosures are substantially the same, the products produced are the same, the difference being in the physical conditions of temperatures and pressures. In this case, appellant asserts a critical range of temperatures of from 95° to 99° C. The reactions in summaried form may be expressed as follows:

$$NaCN \not{/} NH_2 \, CH_2 \, CH_2 \, NH_2 \not{/} HC \begin{matrix} H \\ \diagdown \\ O \end{matrix} \not{/} \frac{NaOH}{H.OH} (_pH_9) =$$

$$Na \, OOC - CH_2 \, \overset{\overset{H}{|}}{N} - CH_2 - CH_2 - NH_2 \not{/} NH_3$$

"In each instance, there is first formed an aqueous solution of sodium cyanide and ethylene diamine, and sodium hydroxide in sufficient amount to bring the pH up to at least 9 and the solution brought up to temperature. The sodium hydroxide is present to repress ionization and no reaction takes place until the formaldehyde is added. The formaldehyde is then added at a regulated rate with vigorous agitation and a sequence of reactions takes place. The formaldehyde reacts with the sodium cyanide to form a transient hydrine or nitrile, Na OCH$_2$CN, which hydrolyzes to the carboxylic acid salt which reacts with the ethylene diamine to be substituted therein for one of the amino hydrogens. The rate of addition of the formaldehyde is geared to the rate at which the carboxylic acid salt substitutes in the amine and this rate is determined as a practical matter by the rate of ammonia evolution, the ammonia being collected in an absorption tower.

"In the first patent (Bersworth 2,387,735) the reaction is presumably carried out at atmospheric pressure and the temperature range is 30° to 100° C but 50° to 75° C is preferred. The claims thereof are limited to the salts of mono carboxylic amines but it is clearly explained in the specification that the polycarboxylic salts can be produced in the same manner by simply adding additional molol weights of sodium cyanide and formaldehyde.

"The second patent (Bersworth 2,407,645) sets forth the same reaction utilizing 30% concentration of reactants at 10 inches of vacuum at 60° to 80° C. The lowered pressure promotes the evolution of ammonia at a lower temperature and, at the same time, avoids the formation of colored polymers of cyanides which latter, however, is also related to the pH of the reaction mixture * * *."

As may be seen in the quoted claims, the application differs from the patents in requiring a temperature range of 95° to 99° C. (approximating 97° C.), and in requiring a low positive pressure of ammonia over the reaction surface. Claims 1 through 5 are limited to the narrow temperature range, and claims 2 through 6 require the low positive pressure of ammonia over the surface of the solution.

The Primary Examiner held that all of the conditions in the methods of the patents are similar to those claimed in the application, except for the specific temperature range and the manner of ammonia expulsion. In regard to the temperature range, he found that since the first patent disclosed the broad range of 30° to 100° C., there was no invention in performing the reaction of the patent at any temperature within that range. With respect to the ammonia expulsion, he held that the immobilization of the ammonia as a reactant, its insolubilization in the solution, and its rapid expulsion therefrom, was no more than what would be expected when operating at a higher temperature. He thus held that the broad unclaimed disclosure of the earlier patents had been dedicated to the public, because of the lack of continuity in the filing of the involved application, and further, that what appellant had accomplished amounted to no more than experimentation with a known process to find the optimum operating condition.

The board affirmed the decision of the examiner, finding that it was not contrary to the teachings of the first patent to conduct the reaction at a lower temperature with a lowered concentration of reactants (a point not argued before this court, nor assigned as error); that the use of a low positive pressure of ammonia over the reaction solution was not clearly prohibited by the second patent, and seemed to be inherent in the method of the first patent; and that the specification and claims of the present application represented a mere difference in degree but not in kind over the patents. The board held that what was said in the case of Ex parte Mullen and Mullen, 1890 C.D. 9, 50 O.G. 837, was applicable, stating:

"That case dealt with the situation where an inventor had secured a patent and subsequently filed an application along the same line of invention, as here. One of three situations can result, and they are: (1) only one indivisible invention is involved. The claims differ as restatements of the same invention and it follows a sec-

ond patent should not be granted. (2) Several distinct inventions mutually dependent upon each other and contributing to a single result are disclosed, but only one is claimed. Such are optionally divisible and can be protected in separate patents, provided there is copendency. If there is no copendency, what is not claimed in the patent is presumed to be dedicated. (3) Several independent inventions are disclosed, only one of which is claimed in the patent. The invention not claimed is not dedicated and provided no bars exist otherwise, there is no obstacle to allowance of a second patent.

"If any of appellant's claims fall within situation (1) they could not be allowed because double patenting would result. Likewise, any of appellant's claims falling within situation (2) could not be allowed because there is a hiatus between the grant of the second patent and the filing of the involved application. Appellant's only recourse is to establish that the claims are directed to an independent invention as regards the earlier patents."

The board then held that appellant's invention did not fall within the third class, and consequently no patent was granted. It was of opinion that all of the claims, with the possible exception of claim 6 fell within class (2), and that claim 6 might fall within class (1), but would still be unpatentable.

In a petition for reconsideration, appellant argued that the board had sustained the rejection on new grounds in citing the Mullen and Mullen case; that the provisions of that case were inapplicable to the instant case; that the method of the involved application is practiced within a *"limited and critical temperature range"* whereby a new and unexpected result—the rates of reaction of the three reactions of the process becoming substantially one and the same reaction—is obtained. Appellant stated that such unification of the reaction rate shortens the process time, and gives higher yields, which are of commercial importance, and argued that in the Bersworth patents there was no disclosure adequate to negative novelty in the "critical" temperature range of the application. (Italics quoted.)

The board considered the petition but refused to change its earlier decision, stating that no new grounds were relied on, and that the contentions of appellant were adequately considered in its previous decision.

In a renewed petition for reconsideration, appellant argued that the prior patents could be used only to reject the application on the ground of "double patenting" and that in such case claims only and not the disclosure of the prior patents could be used. He also argued that the Mullen and Mullen case cited by the board, and the case of Gladding-McBean Corporation v. N. Clark & Sons, 9 Cir., 16 F.2d 50, cited by the examiner, had been overruled by Shipp v. Scott School Tp., Montgomery County, Ind., 7 Cir., 54 F.2d 1019.

.The board again reaffirmed its earlier decision, stating that it deemed the Scott School case, supra, had not overruled the case of Ex parte Mullen and Mullen, supra, primarily because the fact that the office had granted the Shipp patent, involved in the Scott School case, in view of the earlier patents, showed that the Patent Office considered that the later Shipp patent was drawn to an invention independent of that claimed in the earlier patents.

Before this court appellant makes substantially the same contentions made before the tribunals below. He argues that the disclosures of the earlier patents are unavailable as references, since any presumption of dedication is conclusively rebutted by an application filed within a year after the issuance of the patents, and further that the present application is directed to cover the involved method under "an entirely different set of reaction conditions, namely, the performance of the basic condensation-hydrolysis-substitution reaction at a *critical temperature of 97° C* (at which the three rates of reaction in the condensation, hydrolysis and substitution reactions are so rapid as to be substantially one and the same reaction) *and under a positive pressure of NH₃."* (Italics quoted.)

We are of the opinion the contention of appellant that the disclosure of the earlier patents may not be cited against ap-

pellant under the present circumstances is untenable. The case of In re Phillips, 148 F.2d 662, 32 C.C.P.A., Patents, 901, is relevant. The authorities cited by appellant tend to show only that the presumption of dedication may be rebutted when the second application is for an independent and distinct invention from that claimed in the earlier patent. We feel that such a case is not before us.

In regard to the "criticalness" claimed by appellant for the temperature of 97° C., and for the low positive pressure of ammonia over the reaction surface, we do not perceive sufficient evidence of such criticalness to take the case out of the operation of the rule. Appellant disclosed the broad temperature range of 30° to 100° C. for the reactions of the involved process, and there are adequate indications in the patents that appellant knew that each of the reactions of the involved process are affected by the "rate of hydrolysis increasing with increase in temperature above temperatures approximately 30° C. * * *." The criticism of the Primary Examiner that "what applicant has accomplished amounts to no more than experimentation with a known process to find the optimum operating condition" in our opinion is a valid one.

Although appellant argues that the use of a low positive pressure of ammonia over the reaction surface is contrary to the teachings of the first and second patents which require the rapid removal of the ammonia "as it forms," and also the teaching of the second patent that the process may be carried out under a vacuum, we agree with the holding of the board in that respect. The second patent does not unequivocally teach that reduced pressures are necessary at higher temperatures, and only two of the ten claims of that patent require a reduced pressure. Further, it seems probable that the method of the first patent would require a low positive pressure of ammonia over the reaction surface, since the reaction is working against the back pressure of a reflux condenser, as pointed out by the board. The rapid removal of the ammonia from the reaction solution is not antagonistic to the maintenance of a low positive pressure of ammonia *over* the

solution, and in the present application appellant still stresses the importance of the rapid removal of the ammonia from the solution.

The fact that claim 1 does not require the positive pressure of ammonia, and claim 6 is not limited to the narrow temperature range of 95° to 99° C., is additional evidence of the non-criticalness of such limitations.

 Although appellant has urged that new and improved results flow from the present method, such alone is not sufficient to show "criticalness." In re Blondiau, 181 F.2d 223, 37 C.C.P.A., Patents, 1018.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.